IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| HOMER E. KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-CV-251 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for disability insurance and Supplemental Security Income ("SSI") benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 20] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff applied for benefits in April 2005, alleging a disability onset date of May 1, 2001, due to anxiety, "mental status," and total-body pain "that takes him to the floor . . . [and] brings tears to his eyes." [Tr. 102, 115, 587]. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on April 9 and July 16, 2008. At the initial hearing,

plaintiff amended his alleged onset date to April 28, 2005. [Tr. 518].[1]

In August 2008, the ALJ issued a decision denying benefits. The ALJ found plaintiff's subjective complaints to be less than fully credible. [Tr. 21]. Relying on vocational expert ("VE") testimony, the ALJ determined that plaintiff remains able to perform a significant number of medium-level jobs existing in the state and national economies. [Tr. 24]. The ALJ thus concluded that plaintiff is not disabled.

Plaintiff then sought review from the Commissioner's Appeals Council. That request was denied. [Tr. 3]. Plaintiff then appealed to this court. By memorandum and order dated July 16, 2010, United States District Judge Thomas W. Phillips adopted the report and recommendation of United States Magistrate Judge C. Clifford Shirley, Jr., and this case was remanded to the Commissioner for further proceedings. [Tr. 617-19]. Judge Phillips ruled that the ALJ did not adequately explain the weight given to the vocational opinions of mental health professionals Drs. Meadows-Allen, Brietstein, Rodwell, and Castellani. [Tr. 618-19, 634-37].

On December 8, 2010, the ALJ conducted another administrative hearing. On January 27, 2011, he again issued a decision denying benefits. Therein, the ALJ concluded that plaintiff suffers from "back, neck, and knee problems and anxiety," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the

---

[1] Plaintiff's date late insured was December 31, 2007. [Tr. 560]. On his claim for disability insurance benefits, plaintiff must demonstrate that he became disabled on or before that date. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

2

Commissioner. [Tr. 562-63]. The ALJ found plaintiff to have a residual functional capacity ("RFC") for a range of medium exertion restricted to "simple, repetitive non-detailed tasks where coworker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced." [Tr. 563]. In light of the medical evidence of record, the ALJ found plaintiff's subjective complaints to be "incredulous." [Tr. 566, 569]. Relying on VE testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the local and national economies. [Tr. 570-71]. The ALJ again concluded that plaintiff is not disabled.

Plaintiff then again sought review from the Commissioner's Appeals Council. That request was again denied. [Tr. 545]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has again brought his case before this court for review. *See* 42 U.S.C. § 405(g). On appeal, he again argues that the ALJ failed to properly evaluate the mental health evidence of record. Plaintiff also offers a new theory, that he satisfies the Commissioner's mental retardation listing. The court is not persuaded by either of these arguments. The final decision of the Commissioner will be affirmed.[2]

---

[2] In his prior ruling, Judge Phillips concluded that the ALJ made no errors in evaluating plaintiff's *physical* RFC. [Tr. 617-19, 630-34]. In the present appeal, plaintiff does not argue that the ALJ made any subsequent errors regarding the physical RFC. Any such issues are thus waived, *see Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006), and plaintiff's physical complaints will therefore receive only minimal discussion herein.

II.

*Relevant Background*

Plaintiff was born in 1965. He has stated both that he completed high school [Tr. 181, 258] and that he dropped out of school after the eighth or ninth grade. [Tr. 177, 201, 216]. He has stated both that he can [Tr. 201] and cannot [Tr. 494] read. The administrative record evidences a longstanding history of substance abuse dating back to at least age 18. [Tr. 496, 742].

Plaintiff performed factory, construction, and moving work for 25 years. [Tr. 147]. He worked for 14 years as a moving company foreman/supervisor, spending between "most" and "all" of his work hours supervising 4 to 11 employees. [Tr. 147-51, 169-70].

III.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340

4

U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[3] Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[3] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

5

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

*Credibility*

As noted, the ALJ found plaintiff's subjective complaints to be "incredulous." That finding stemmed from, and impacted the ALJ's consideration of, the medical record. The ALJ's credibility determination is intertwined with the two arguments presented on appeal. The court thus finds it necessary to briefly address the issue, and to clarify that the ALJ's credibility determination was supported by substantial evidence.

On July 2, 2005, plaintiff told consulting examiners that he had been "drinking real bad" as recently as April 2005 (the month of his alleged disability onset). [Tr. 494]. Then, plaintiff told the same examiners that a six-pack of beer will last him three to four weeks. [Tr. 495]. The examiners found that claim to be "inconsistent with previously

6

reported information." [Tr. 495]. They opined that plaintiff "often turns to drugs or alcohol when he is experiencing stress or anxiety." [Tr. 495]. Plaintiff claimed that he was not currently using alcohol or drugs. [Tr. 496].

On July 28, 2005, consulting physical examiner Dr. Jeffrey Uzzle observed, "Pain behaviors and exaggerated illness behaviors are noted during the examination. He moans and groans a lot, and moves in a very slow manner about the exam room with pain behaviors that seemed overreacted in my clinical opinion." [Tr. 488].

On July 22, 2007, plaintiff entered Peninsula Hospital with complaints of hallucinations and suicidal ideation. He had been using "about every drug he could get a hold of. Urine drug screen was positive for opiates, benzodiazepines, cocaine, and cannabis," and alcohol had been consumed as recently as the previous day. [Tr. 258].

On September 28, 2007, plaintiff's most recent drug screen with Cherokee Health Systems was positive. Nurse practitioner Ingrid Gurney noted that plaintiff was "very fixed on" contending that the toxicology results were erroneous because "he is not using any drugs at all, *as he endorsed after finding out the results of a positive drug screen last time*." [Tr. 243] (emphasis added). Plaintiff wanted Ms. Gurney to write a letter to his attorney stating "that he is not here for drug treatment." [Tr. 243]. Ms. Gurney "reiterated to him that when his urine drug screens are clean that we will be able to say that he is not having any problems with substance abuse." [Tr. 243].

7

On February 12, 2008, plaintiff told consulting psychologist Jodi Castellani that: "he used to drink beer *on occasion* 'a long time ago'"; that "he would drink up to a fifth of liquor or so per day" ("two to three years" ago); that he quit smoking marijuana "a long time ago"; that he stopped using crack cocaine "last year or the year before"; and that he had not used methamphetamine "in over eight years." [Tr. 215] (emphasis added).[4] A mere three days later, plaintiff told consulting physician Eva Misra that he still "*occasionally* drinks alcohol" but was a "*heavy* drinker in the past." [Tr. 201] (emphasis added).

The administrative record between 2005 and 2010 contains other claims of abstinence. [Tr. 176, 231, 518, 535, 706, 808]. The record also contains other documentation of repeated substance abuse. [Tr. 367, 705-06]. Cumulatively, this evidence shows either that plaintiff's claims of sobriety are false, or that such episodes are short-lived.

There are other inconsistencies. Plaintiff told consultant Alice Garland that he did not know whether he had ever been fired from a job, and he claimed that he no longer worked for the moving company because he "could not handle . . . being around people." [Tr. 177]. He told other consulting examiners that he quit his job "because of back problems and stress." [Tr. 495]. However, in February 2005, plaintiff acknowledged to University of Tennessee Memorial Hospital staff that he had lost his job due to alcohol and cocaine abuse. [Tr. 736].

---

[4] In response to questioning by the ALJ at the April 2008 administrative hearing, plaintiff admitted that his statements to Dr. Castellani were not truthful. [Tr. 519-20].

On October 30, 2007, nurse practitioner Gurney wrote that plaintiff was "here with his wife. . . . He says that the Seroquel [anti-psychotic, anti-bipolar medication] has helped him rest better, but then he contradicts himself and says that sometimes he does not sleep until 2:00 or 3:00 in the morning and always has to get up at daylight. Again, he contradicts himself because he says that he is not having any problems with being sedated during the day, and his wife says he is having trouble sleeping the medications off, but then she contradicts herself and says that he is up and running around all day." [Tr. 186].[5]

Other mental health sources, to be cited below, also questioned the veracity of plaintiff's abstinence claims, in addition to suspecting that he is malingering for financial gain. The administrative record, as discussed herein and by the ALJ, provides substantial evidentiary support for the conclusion that the self-reporting in this case is less than reliable.

V.

*Analysis*

Plaintiff now argues that he should have been found to satisfy the Commissioner's § 12.05C mental retardation listing, and that his "mental impairments are more numerous and more limiting that found by the ALJ." The court will address these

---

[5] In July 2007, Dr. Kris Houser of Peninsula Hospital diagnosed bipolar disorder, even though plaintiff was at that time "us[ing] about every drug he could get a hold of." [Tr. 258-59]. However, clinical psychologist Castellani expressed an "ongoing concern about substance abuse" which she deemed "important because cocaine/meth abuse can mimic signs of mania." [Tr. 223]. Based on her evaluation, Dr. Castellani thought the correct diagnosis was "Mood Disorder." [Tr. 223]. Treating nurse practitioner Gurney also questioned the bipolar diagnosis and opined that "Mood Disorder" was a more appropriate designation. [Tr. 241, 244]. In part due to plaintiff's continued drug abuse, Ms. Gurney was admittedly "not quite sure what is going on." [Tr. 242].

9

issues in turn.

## A. Mental Retardation

The ALJ concluded that plaintiff has borderline intellectual functioning. [Tr. 563]. Plaintiff argues that he should have instead been found to satisfy the Commissioner's mental retardation listing, which requires in material part that a claimant demonstrate:

> 1. significantly subaverage general intellectual functioning with deficits in adaptive functioning, initially manifested before age 22; and
>
> 2. a valid verbal, performance, or full scale IQ of 60 to 70; and
>
> 3. a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

All of the above criteria must be satisfied. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). Plaintiff bears the burden of proof. *Walters*, 127 F.3d at 529.

The parties are in apparent agreement that plaintiff has a physical or other mental impairment that significantly limits his functioning in the workplace, so the court will presume, without deciding, that plaintiff has made that showing. Regardless, plaintiff has failed to meet his burden as to § 12.05C's first and second prongs.

As for the first prong, plaintiff has not shown "significantly subaverage general intellectual functioning with deficits in adaptive functioning, initially manifested before age 22." Plaintiff contends, based on his claims of lifetime difficulty with reading, writing, and academics, that satisfaction of the first prong should be presumed. The court notes again,

10

however, that to one doctor plaintiff claimed to have completed high school. [Tr. 258]. More striking is plaintiff's admission to examiner Alice Garland that while in school he was "in trouble all the time for 'being a boy,'" and that he "quit school because he did not want to go 'no more.'" [Tr. 177]. Plaintiff has not proven that he dropped out of school at all or that any problems in functioning were intellectual rather than behavioral.

Plaintiff has also not met his burden of proof as to § 12.05C's second prong, even though recent testing has thrice produced IQ scores facially in the necessary range. Clinical psychologist Castellani evaluated plaintiff on February 12, 2008. She administered the WAIS-III and WRAT-4 intelligence tests, both of which indicated a full scale IQ of 59. [Tr. 220-21]. Ms. Garland evaluated plaintiff in May 2008 and administered the WAIS-III. Results "yielded a verbal IQ of 61, a Performance IQ of 60 and a Full Scale IQ of 57, placing him in the mildly mentally retarded range." [Tr. 179].

Based on these scores, plaintiff contends that he satisfies § 12.05C's second prong. The scores alone, however, do not tell the whole story.

Ms. Garland wrote that her WAIS-III results "are not thought to be accurate scores." [Tr. 179]. The Commissioner had requested additional testing (MMPI-2 and Vineland), but those were not performed "due to the claimant's poor effort" and his "poor investment in test taking." [Tr. 175, 179-80]. Plaintiff "appeared to put forth poor effort for the most part in this evaluation." [Tr. 176]. Jokes made by plaintiff "suggest[ed] a higher level of intelligence," and certain recollections belied his claims of memory loss. [Tr. 177,

11

180]. In light of all these facts, Ms. Garland estimated plaintiff's true intelligence level to be "low average," and her primary diagnosis was "malingering." [Tr. 178, 181]. She declined to complete a Mental RFC Assessment questionnaire due to plaintiff's "poor effort in the evaluation" and the "questionable veracity" of his claims of abstention from drugs and alcohol. [Tr. 182-83].

As for Dr. Castellani, that evaluator noted "striking deviations between the claimant's presentation and performance between this evaluation and his treatment records." [Tr. 213]. Dr. Castellani also noted inconsistencies in plaintiff's self-reports regarding substance abuse. [Tr. 214-15]. She deemed those inconsistencies "of concern given his abysmal appearance today. He adamantly denies recent substance abuse but given his aforementioned inconstancies [sic], and deteriorated personal hygiene and presentation, ongoing review of this issue is recommended." [Tr. 215]. Further, plaintiff repeatedly stated that he was anxious and frustrated, but in Dr. Castellani's opinion "he did not actually appear to be frustrated . . . [and] his body presentation did not appear as if he was actually anxious." [Tr. 216]. Most importantly, Dr. Castellani observed that it was "not clear if Mr. King gave his best effort in the Mental Status Evaluation" or in his IQ testing. [Tr. 217, 220]. Dr. Castellani was "concern[ed] that the claimant did not give his best performance on this examination, assuming that no dementia due to substance abuse has occurred." [Tr. 220]. She noted "no known history of Mental Retardation and prior estimates of his intellectual functioning did not suggest functioning in that realm." [Tr. 223]. *See, e.g., Elam ex rel.*

12

*Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126-27 (6th Cir. 2003) (§ 12.05C not met where medical sources opined that the claimant "was actually operating within the borderline range of intellectual functioning, although her intelligence test scores, standing alone, would indicate mental retardation").[6]

The court additionally notes that plaintiff's 14-year career as a foreman/supervisor is wholly inconsistent with mental retardation. For all the reasons discussed herein, the ALJ did not err in concluding that plaintiff suffers from borderline intellectual functioning rather than mental retardation.

### B. Mental RFC

A September 2005 state agency Mental RFC Assessment predicted no more than moderate limitation in any area. [Tr. 462-64]. Citing that assessment, the ALJ found that plaintiff is capable of performing a range of medium exertion, limited to "simple, repetitive non-detailed tasks where coworker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced." [Tr. 563]. Plaintiff argues that further limitations are documented by the opinions of Ms. Garland and Drs. Meadows-Allen, Brietstein, Rodwell, and Castellani.

---

[6] In July 2005, psychologists Brietstein and Meadows-Allen estimated that plaintiff's intelligence is in the low-average to borderline range. [Tr. 496]. In July 2007, Dr. Houser observed that plaintiff "appears to be in the low average to average range of intelligence." [Tr. 258].

13

Ms. Garland estimated that plaintiff's ability to relate to others would be "poor to impaired, depending on the situation." [Tr. 178]. However, the ALJ correctly explained that Ms. Garland "opined that his primary diagnosis would be malingering such that she was unable to give other diagnoses and limitation." [Tr. 569]. Presuming that a "poor to impaired" ability to relate is at all inconsistent with the ALJ's RFC finding, the ALJ sufficiently explained his rejection of Ms. Garland's estimate.

A "Dr. Rodwell" completed a Mental RFC Assessment form in November 2005, predicting "no useful ability to function" in eleven areas. [Tr. 422-23]. The ALJ did not adopt that assessment, and he adequately explained why. Dr. Rodwell did not indicate the grounds for his opinion, which therefore appears to have been based on plaintiff's unreliable self-reporting. [Tr. 564]. The court further notes that Dr. Rodwell completed his assessment in or around a period of plaintiff's cocaine abuse. [Tr. 367, 423].

Next, Dr. Castellani predicted marked limitation in comprehension, memory, concentration, persistence, adaptation, and social interaction. [Tr. 222]. The ALJ noted,

> that consultative psychologist Dr. Castellani has provided marked mental limitations regarding the claimant's ability to function but [the ALJ] gives no weight to her overly restricted limitations in light of the fact that the psychologist asserts that the claimant's statements regarding his sobriety from drugs and alcohol is questionable. The psychologist further observed that he did not appear to put forth his best efforts during the entire examination. . . . The undersigned opines that the claimant is not credible due to his lack of truthfulness when questioned regarding his history of substance abuse. Therefore, considering the claimant's poor efforts during the testing process as well as his poor credibility regarding his history of substance abuse, the Administrative Law Judge gives no weight to the opinion of Dr. Castellani.

14

[Tr. 565].  For the reasons discussed in the preceding section of this opinion, and in light of Dr. Castellani's possible diagnoses of "Malingered Psychosis" and "Dementia secondary to Polysubstance Abuse" [Tr. 221], the ALJ sufficiently explained his rejection of that psychologist's opinion.

Next, psychologists Abraham Brietstein and Sadonya Meadows-Allen performed a consultative examination in July 2005.  In material part, these psychiatrists opined that plaintiff would be severely impaired in adaptation and social interaction. [Tr. 498].  However, Drs. Brietstein and Meadows-Allen qualified that they viewed plaintiff as an apparently "credible informant *except with regard to his drinking*," and that plaintiff would be capable of managing his own finances "*assuming he is being reasonably truthful about his drinking*." [Tr. 497-98] (emphasis added).  The ALJ gave "minimal weight" to Dr. Brietstein and Meadows-Allen's opinion because those psychologists did not find plaintiff to be fully credible. [Tr. 564].  Substantial evidence supports the ALJ's decision on that point.

Lastly, to the extent that plaintiff would argue that various GAF scores are probative of his true condition, those scores are of no controlling value.  *See generally DeBoard v. Comm'r of Soc. Sec.*, No. 05-6854, 2006 WL 3690637, at *3-4 (6th Cir. Dec. 15, 2006); *see also White v. Comm'r of Soc.* Sec., 572 F.3d 272, 276 (6th Cir. 2009) (citation and quotation omitted) (GAF score is a "subjective determination"); *Oliver v. Comm'r of Soc. Sec.*, No. 09-2543, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (a GAF score is

15

generally "not particularly helpful by itself" and is "not dispositive of anything in and of itself").

VI.

*Conclusion*

For the reasons discussed herein, the ALJ's January 2011 ruling was well-explained and supported by substantial evidence. The Commissioner's final decision will be affirmed, and an order consistent with this opinion will be entered.

ENTER:

<u>    s/ Leon Jordan    </u>
United States District Judge

16

Case 3:11-cv-00251-RLJ-CCS   Document 22   Filed 05/22/12   Page 16 of 16   PageID #: 119